IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **JOHN H. EDWARDS, JR.,**       ) | |
| ) | |
| **Plaintiff,**       ) | |
| ) | |
| v.       ) | Case No. 2:19-cv-831-WKW-CWB |
| ) | |
| **TLC INVESTMENTS, d/b/a**       ) | |
| **STONES RIVER ELECTRIC,**       ) | |
| **d/b/a SRE, et al.,**       ) | |
| ) | |
| **Defendants.**       ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

John H. Edwards, *pro se*, filed this action on October 28, 2019 (Doc. 1) and sought leave to proceed *in forma pauperis* (Docs. 2-4). He thereafter was granted *in forma pauperis* status, and the clerk was directed to defer service of process pending a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915(e). (Doc. 7). With the proceedings having been referred for appropriate disposition or recommendation (Doc. 6), the undersigned Magistrate Judge entered an Order dated November 17, 2022 that found the Complaint to be deficient but afforded Plaintiff an opportunity to cure by filing an Amended Complaint on or before December 8, 2022. (Doc. 8). The Order set forth in detail the deficiencies with the original Complaint, identified specific allegations that must be included in any Amended Complaint, and expressly informed Plaintiff "that his failure to file an Amended Complaint meeting the requirements of this Order and the Federal Rules of Civil Procedure will result in a recommendation that the action be dismissed." (*Id*.). Despite that admonition, Plaintiff has taken no curative action. The undersigned therefore recommends that this action be dismissed.

I.      **Legal Standard**

"A dismissal under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal under Federal Rule of Civil Procedure 12(b)(6). Dismissal for failure to state a claim is appropriate when the facts as pleaded do not state a claim for relief that is 'plausible on its face.'" *Thompson v. Rundle*, 393 F. App'x 675, 678 (11th Cir. 2010) (citations omitted). To state a claim for relief that is plausible, a plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint thus should contain a "'plain statement' possess[ing] enough heft to 'show that the pleader is entitled to relief.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Importantly, however, courts do not consider "any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

*Pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys" and are to be liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). Nonetheless, a *pro se* complaint still "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And it has been made clear that a court does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Investments v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal*, 556 U.S. 662 (2009). It is further recognized that a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). Therefore, a *pro se* litigant must comply with the Rule 8 requirement to file a "short and plain statement" showing an entitlement to relief and with the Rule 10 requirement to "state its claims … in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 8(a) & 10(b).

## II.     Plaintiff's Complaint

The Complaint names the following parties as defendants: TLC Investments, d/b/a Stones River Electric, d/b/a SRE; Tanner Springer; Jeffrey Fitzpatrick; Jami Hall; Jeremey Bosworth; John Cornelius; and Jeremey Doyle. (Doc. 1 at ¶¶ 1-2). Plaintiff alleges that those defendants engaged in misconduct described generally as "hazing based on skin color," "false imprisonment," and "unfair wage practices." (*Id*. at ¶¶ 3, 5). All such allegations stem from Plaintiff's 18-day employment with TLC Investments, d/b/a Stones River Electric, which spanned from May 6, 2019 until his termination on May 24, 2019. (*Id*. at pp. 2-5). As requested relief, Plaintiff lists "money never received," "jail time," "hazing discrimination," "wage lost," and $5,000,000. (*Id*. at ¶ 6).

In substance, the Complaint consists of 6 numbered paragraphs and approximately 22 unnumbered paragraphs, along with 11 exhibits comprising a total of 120 pages. (Doc. 1; Doc. 1-1 to -11). The core allegations appear to be as follows:

> I John Edwards worked 18 days I only received 100.00 dollars in Cash for the entire time. Trevor Hodge issued the $100. dollars in cash. the first week {witness Trevor Hodge} I was told I will receive periderm each week.
> . . .
> I was told I needed to go Pensacola Florida to meet with Jeremy Bosworth after training with Trevor Hodge in Madison, Tennessee
> . . .
> At that time, I John Edwards get a call from Jeremy Bosworth stating he was just checking on me and see if I had made it to Pensacola, Florida I John Edwards said no I'm in route in a storm {Exhibit B} pages 3 and 4 show the storm. Jeremy Bosworth stated We need to be on that site at 4:00am.
> . . .
> I got there around 3:14am with 46 minutes wait for Jeremy Bosworth However Jeremy Did not arrive until 4:40am . . . . We worked well together However It did sit well with me about (Jeremy Bosworth) asking me about pay and hours I received the week prior. Jeremy Bosworth gave me the route and stated this will be the First store and Mobile, Alabama will be the last for this week.
> . . .

3

Wednesday May 15,2019 I John Edwards was a little late to work and I called Jeremy Bosworth right away to let him know I was running late. {Exhibit 1} page 11 Calls to Jeremy. Jeremy told me its ok some people don't normally work this hour and to google Publix Store number 1813 and head that way and I'll be the shortly is what Jeremy Bosworth stated. I John Edwards did has Jeremy Bosworth told me to do and Jeremy Bosworth didn't arrive until 9:30. . . . Jeremy stated he spoke with Tanner Springer. And Tanner asked how you was doing Jeremy Bosworth told Tanner, that I John Edwards was doing a good job just was a little late this Morning. In return Tanner stated to Jeremy and Jeremy told me that Tanner said Jeremy Bosworth needs to be hard on my ass and that Tanner said he was go run my ass next week.
. . .
The next morning, we need to go to Publix store 1318 for about 30 minutes for one correction and that's where the trailer battery stops working in front the store on my truck and It would not move. . . . . I replaced the battery and the trailer worked I called Jeremy Bosworth right away. When I called Jeremy He stated on Wednesday I didn't tell you to go to that site. I John Edwards asked what do you mean you didn't tell? Jeremy Stated Publix store on Wednesday morning I didn't tell you to go there and wait until I get there. I said yes but what the address to the mobile store Jeremy gave me the address and I enter it in the GPS on my phone and I arrived Jeremy said I was late and he had to do 4 lights by himself and the I need to complete the other 6 to 7 lights 400 amp Lights which I did complete within hours.
. . .
The following day Friday May 17, 2019 I received my first pay check it was deposit into my checking account {Exhibit 23A} shows the e-stub how I received everything I should I received everything but the periderm checks or money like I was told by Tanner Springer {Exhibit 5A} page 2 I receive text messages from Tanner Springer with accusation of me John Edwards sleeping in the truck for 2 hours and going to a site when I wasn't told to go. stress level and words was being misspelled I wanted Tanner to call and spoke to clearly understand each other {Exhibit 1} page 6 through 10 are text message from Tanner Springer

I was told by Tanner Springer I needed to go to Georgia for a week. {Exhibit 1} Page 4 text message from Tanner Springer. Tanner Springer stated I need to Call SRE John Cornelius to get everything figured out for next week. May the 20th 2019. I call John Cornelius on Saturday. May 18th or 19th We talked I mention the time hard time l hard in Florida and with Tanner. John Cornelius said he going to be honest Tanner said for me {John Cornelius to Be a hard on you John Edwards.
. . .
The Hazing was more boldly with John Cornelius I was give unreasonable travel times each MORNING it took 30 to 35 minutes and some morning loner depending the traffic in the area to arrive to John Cornelius . . . .

May 23, 2019 left went I was told go back to Montgomery Alabama went to the store get coffee but I clocked out first on the way home just around the corner I get

4

>a text from Tanner said I John Edwards not longing employed With Stones River Electric (SRE) {Exhibit 2A } page 2 Tanner message from Tanner Springer fired me through text message After the firing I let Tanner know my frustration about the last 2 weeks How I was harassed called liars and accused me of stealing hours and how he orchestrated His guys into Hazing and discrimination.
>
>AT TIME their vehicle was still in my procession and did not want to pick Vehicle up the day of tarnation from employment {Exhibit 2A} page to Text message. I felt the large vehicle needed to be remove and to a secured location so nothing will happen to vehicle I called a Towing Company {Exhibit D} page 1 shows cellphone record were l called towing Company. Also {Exhibit C} pages 1 Through 7, 9 and 10 shows the multiple break-ins which in my neighborhood Is the main reason for the removal and plus I'm no longer employed so that relieves me of all duties and responsibilities . . . .  And Tanner Texted again this time threaten to have the cost tow to come out my final payroll check {Exhibit 2A} page 3 show Tanner Springer making threats of taking the pay out my final check. At around 5:30 I call the towing Company back and Cancel the tow. Their Vehicle was secured by me John Edwards prior to calling and canceling the tow
>
>I John Henry Edwards Jr Secured their Vehicle all night and I asked the Company to be compensated me for the doing so. I was told yes by a Jeffery Fitzpatrick that they would compensation and Tanner denies that Jeffery Fitzpatrick said he would compensate.
>. . .
>At Noon on the May 24, 2019 no one came so I went to sleep after being up most of the night at around 5:00pm on the same day May 24, 2019 an Officer came the door asking can he talk
>
>I John Edwards said yes. The officer asked about the truck I John Edwards told him the truck is waiting for it's owner the officer said you have a possible warrant . . . . I John Edwards went to jail and later Bond out {Exhibit G} page 2 show a $500.00 bond page 1 show an Appearance Bond and page 3show the TRIAL DATE. After Bond out of jail they sent a tow to pick the vehicle up. I get a Tanner Springer saying I'm responsible for the cost of tow. . . .
>
>Friday THE 31 of MAY I John Edwards should have received my final payroll check in my account like was told I didn't receive my final pay until Saturday June 1 2019 . . . . hourly rate of pay was changed to 8.39. and incorrect taxes payments.
>
>On June 17,2019 I John Edwards appeared to City of Montgomery Municipal Court and Pleaded not guilty of the change [Unauthorized Use Auto]. And they set a TRIAL date on October 17, 2019 on The TRIAL Day ended in a non-prosecute. and all changes were dropped.

(Doc. 1 at pp. 2-5; Doc. 1-5 at p. 3).

**III.     Discussion**

As pleaded, the Complaint does not comply with the requirements set forth in Rule 8 and Rule 10 of the Federal Rules of Civil Procedure. "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).  "A shotgun pleading is one where 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Nurse v Sheraton Atlanta Hotel*, 618 F. App'x at 987, 990 (11th Cir. 2015) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).

The Eleventh Circuit has identified four types of shotgun pleadings: (1) pleadings that "contain[ ] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;" (2) pleadings that are "guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) pleadings that "commit[ ] the sin of not separating into a different count each cause of action or claim for relief;" and (4) pleadings that commit "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1321-23 (footnotes omitted).[1]

---

[1] "[I]n a case in which a party, plaintiff or defendant, files a shotgun pleading, the district court 'should strike the [pleading] and instruct [the party] to replead the case—if [the party] could in good faith make the representations required by Fed. R. Civ. P. 11(b).'" *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018) (citation omitted).  Moreover, "[i]n the repleading order, the district court should explain how the offending pleading violates the shotgun pleading rule so that the party may properly avoid future shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018).  The undersigned afforded Plaintiff such an opportunity as reflected in the November 17, 2022 Order.  (Doc. 8).

6

Here, the Complaint provides a textbook example of a shotgun pleading: it is not divided into counts or causes of action; it is filled with vague, rambling, and confusing factual allegations not tied to any federal, state, or local law; and it does not specify which allegations apply to which of the defendants. All such characteristics have been deemed insufficient "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. In short, the Complaint as pleaded does not contain sufficient structure or content for the court to discern any viable cause of action against any of the defendants.

Equally problematic is that the Complaint contains no assertions regarding jurisdiction. It is axiomatic that federal courts are courts of limited jurisdiction and that the burden of establishing jurisdiction "rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). If jurisdiction is predicated upon a federal question, the plaintiff must show that he is bringing a cause of action under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331. Accordingly, the November 17, 2022 Order informed Plaintiff that he must "identify the federal cause(s) of action under which [he] brings his claims" and that, to the extent he might be attempting to assert a discrimination claim under Title VII, he must allege exhaustion of administrative remedies with the Equal Employment Opportunity Commission. (Doc. 8 at p. 9, n. 4). Alternatively, Plaintiff was informed that he could "allege sufficient facts to support diversity jurisdiction" and was provided with the requirements of 28 U.S.C. § 1332(a). (*Id*. at pp. 7-8). Nonetheless, Plaintiff elected to take no action. As a result, there is no footing to which the court can moor a finding of jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."); *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1240 (11th Cir. 2003).

IV.     **Conclusion**

For the reasons set forth herein, the undersigned Magistrate Judge RECOMMENDS that this action be dismissed without prejudice.

It is hereby ORDERED that objections to this Recommendation must be filed on or before January 6, 2023, the parties may file written objections to this Recommendation. An objecting party must identify the specific portion of the factual findings or legal conclusions to which the objection is made and must describe in detail the basis for the objection. Frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to this Recommendation shall bar a party from a de novo determination by the District Court of any factual findings or legal conclusions contained herein and shall waive the right of the party to challenge on appeal any subsequent order that is based on factual findings and legal conclusions accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this the 23rd day of December 2022.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**